United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 20, 1998 Decided August 6, 1999 

 No. 97-5356

 Public Citizen, et al., 
 Appellees

 v.

 John Carlin, Archivist of the United States, et al., 
 Appellants

 Consolidated with 
 98-5173

 Appeals from the United States District Court 
 for the District of Columbia 
 (No. 96cv02840)

 Matthew M. Collette, Attorney, U.S. Department of Justice, 
argued the cause for appellants. With him on the briefs were 

Frank W. Hunger, Assistant Attorney General, Douglas N. 
Letter, Appellate Litigation Counsel, and Miriam Nisbet, 
Special Counsel for Information Policy, National Archives and 
Records Administration.

 Michael E. Tankersley argued the cause for appellees. 
With him on the brief was Alan B. Morrison.

 Before: Silberman, Williams, and Ginsburg, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Ginsburg.

 Ginsburg, Circuit Judge: In 1995 the Archivist of the 
United States promulgated General Records Schedule 20 
pursuant to his authority under the Records Disposal Act. 
See 44 U.S.C. s 3303a(d). GRS 20 requires each federal 
agency to which the RDA applies to dispose of word process-
ing and electronic mail files located in personal computers 
once it has copied them to a paper or an electronic record-
keeping system. See General Records Schedule 20; Disposi-
tion of Electronic Records, 60 Fed. Reg. 44,643 (1995).

 Public Citizen and others sued the Archivist, the Executive 
Office of the President, and two components of the EOP 
(hereinafter collectively referred to as the Archivist) under 
the Administrative Procedure Act, alleging that GRS 20 
violates the RDA and is arbitrary and capricious. The dis-
trict court agreed and, on cross-motions for summary judg-
ment, entered a declaratory judgment holding the schedule 
invalid. See Public Citizen v. Carlin, 2 F. Supp. 2d 1 (D.D.C. 
1997) (Carlin I).

 The Archivist now appeals. We hold that GRS 20 is valid 
and therefore reverse the judgment of the district court. 
Because we uphold GRS 20, we need not decide whether, as 
the Archivist maintains, the Executive Office of the President 
may not properly be sued as an "executive agency" subject to 
the Federal Records Act, see id. at 8-9, nor whether the 
district court lacked the power to enter an injunction ordering 
the Archivist to comply with its declaratory judgment holding 

the schedule invalid. See Public Citizen v. Carlin, 2 F. Supp. 
2d 18, 20 (D.D.C. 1998) (Carlin II).

 I. Background

 The Federal Records Act is a collection of statutes govern-
ing the creation, management, and disposal of records by 
federal agencies. See 44 U.S.C. ss 2101-18, 2901-09, 
3101-07, 3301-24. The RDA portion of the FRA establishes 
the exclusive means by which records subject to the FRA 
may be discarded. See id. s 3314; see also id. s 3301 
(defining "records").

 The RDA requires an agency to get the approval of the 
Archivist before disposing of any record. See Armstrong v. 
EOP, 1 F.3d 1274, 1279 (D.C. Cir. 1993). This is ordinarily 
done in either of two ways. In one the agency submits to the 
Archivist a list or schedule of records it proposes to discard, 
see s 3303, which the Archivist may approve only if he 
determines that the records "do not, or will not after the 
lapse of the period specified, have sufficient administrative, 
legal, research, or other value to warrant their continued 
preservation by the Government." s 3303a(a). In the other 
the Archivist promulgates a schedule listing types of records 
held by multiple agencies, which he has determined pursuant 
to the same standard of value should be discarded. See 
s 3303a(d). Whether the agency or the Archivist initiates the 
process, however, for the Archivist to authorize the disposal 
of a record is to order its disposal. See s 3303a(b). If the 
Archivist errs in authorizing disposal, therefore, valuable 
federal records could be lost forever.

 Items 13 and 14, the only parts of GRS 20 challenged here, 
authorize the disposal of word processing and electronic mail 
files that have been copied to an agency recordkeeping sys-
tem from a personal computer (whether stand-alone or net-
worked). See GRS 20, 60 Fed. Reg. at 44,649/1.* In the 

__________
 * The challenged items provide:

 13. Word Processing Files
 
preamble to GRS 20 the Archivist explained that a federal 
agency needs the authority to delete files from personal 
computers in order "to avoid system overload and to ensure 
effective records management." Id. at 44,644/2. He also 
explained that for

 records to be useful they must be accessible to all 
 authorized staff, and must be maintained in recordkeep-
 ing systems that have the capability to group similar 
 records and provide the necessary context to connect the 
 record with the relevant agency function or transaction. 
 Storage of electronic mail or word processing records on 
 electronic information systems that do not have these 
 attributes will not satisfy the needs of the agency or the 
 needs of future researchers.
 
Id. at 44,644/1.
 II. Analysis
 Public Citizen argues that in promulgating GRS 20 the 
Archivist exceeded his statutory authority in two respects: 
__________
 Documents such as letters, memoranda, reports, handbooks, 
 directives, and manuals recorded on electronic media such as 
 hard disks or floppy diskettes after they have been copied to an 
 electronic recordkeeping system, paper, or microform for 
 recordkeeping purposes.

 Delete from the word processing system when no longer 
 needed for updating or revision.
 
 14. Electronic Mail Records
 
 Senders' and recipients' versions of electronic mail messages 
 that meet the definition of Federal records, and any attach-
 ments to the record messages after they have been copied to an 
 electronic recordkeeping system, paper or microform for 
 recordkeeping purposes.
 
 Delete from the e-mail system after copying to a recordkeep-
 ing system.
 
 (Note: Along with the message text, the recordkeeping system 
 must capture the names of sender and recipients and date 
 (transmission data for recordkeeping purposes) and any receipt 
 data when required.)

first, by applying the schedule to so-called "program" records, 
as opposed to "housekeeping" or administrative records, and 
second, by failing to set a specific time period for the reten-
tion of records before their disposal. Public Citizen also 
challenges as arbitrary and capricious the Archivist's determi-
nation that electronic mail and word processing files lack 
sufficient value to warrant continued preservation after they 
have been copied and placed in an agency recordkeeping 
system.

A. Statutory Authority

 Because the Archivist, as head of the National Archives and 
Records Administration, is charged with administering the 
RDA, see 44 U.S.C. s 3302, we review his interpretation of 
the Act under the two-step analysis of Chevron U.S.A., Inc. v. 
NRDC, 467 U.S. 837 (1984). Under step one, we ask "wheth-
er Congress has directly spoken to the precise question at 
issue." Id. at 842. If so, "that is the end of the matter; for 
the court, as well as the agency, must give effect to the 
unambiguously expressed intent of Congress." Id. at 842-43. 
If, however, the statute is silent or ambiguous with respect to 
the specific issue, then at step two we "must defer to the 
agency's interpretation so long as it is reasonable, consistent 
with the statutory purpose, and not in conflict with the 
statute's plain language." OSG Bulk Ships, Inc. v. United 
States, 132 F.3d 808, 814 (D.C. Cir. 1998).

 1. Housekeeping versus program records
 
 According to Public Citizen, "GRS 20 is contrary to law 
because it ... authorizes destruction of all types of word 
processing and electronic mail records without regard to 
content." More specifically, Public Citizen claims s 3303a(d) 
applies only to an agency's "housekeeping" records--that is, 
records that relate to routine administrative chores such as 
personnel and procurement--and that the Archivist exceeded 
his statutory authority by promulgating a general records 
schedule covering "program" records, which document an 
agency's substantive functions.

 a. Chevron step one
 
 We begin the interpretive enterprise, as always, with the 
text of the statute. See Republican Nat'l Comm. v. FEC, 76 
F.3d 400, 405 (D.C. Cir. 1996). As the Archivist observes, 
s 3303a(d) makes no reference either to program or to house-
keeping records; rather, it authorizes him to schedule for 
disposal "records of a specified form or character." Because 
this term is nowhere defined in the RDA, "our task is to 
construe it in accord with its ordinary or natural meaning." 
Director, Office of Workers' Comp. Pgms., Dep't of Labor v. 
Greenwich Collieries, 512 U.S. 267, 272 (1994). And 
s 3303a(d) is naturally read to authorize the Archivist to 
schedule records in the "form" of word processing and elec-
tronic mail files. See Webster's New Int'l Dictionary Una-
bridged 992 (2d ed. 1942) ("In general, form is the aspect 
under which a thing appears, esp. as distinguished from 
substance" (emphasis in original)). Moreover, as the Archi-
vist observes, elsewhere in the RDA "form" is used to de-
scribe the physical attributes of a record rather than its 
content. See s 3301 (" 'records' includes all books, papers, 
maps, photographs, machine readable materials, or other 
documentary materials, regardless of physical form or charac-
teristics"). Indeed, we notice that in 1976 the Congress 
amended s 3301 to provide that "records" may be in the 
"form" of "machine readable materials." Federal Records 
Management Amendments of 1976, Pub. L. No. 94-575, 
s 4(c)(2), 90 Stat. 2723, 2727.

 Although Public Citizen would have us read s 3303a(d) so 
as not to authorize the Archivist to schedule a record in the 
form of a word processing or electronic mail file if its content 
relates to a program function of the agency, it offers no 
interpretation of the statutory term "form." On the contrary, 
Public Citizen concedes that the "phrase ['of a specified form 
or character'] in isolation includes program records." Appar-
ently, then, it means to suggest either that the term "form" 
really means "content" or that it should be ignored. We can 
not accept either suggestion. See Edison Elec. Inst. v. EPA, 
996 F.2d 326, 335 (D.C. Cir. 1993) (elementary canon of 
construction that court will not read word out of statute).

 Public Citizen tries to overcome the plain meaning of the 
statute--which seems to reject rather than to compel the 
proffered distinction between program and housekeeping rec-
ords--exclusively by resort to the legislative history of the 
RDA. As Judge Easterbrook has explained, however:

 The political branches adopt texts through prescribed 
 procedures; what ensues is the law. Legislative history 
 may show the meaning of the texts--may show, indeed, 
 that a text "plain" at first reading has a strikingly 
 different meaning--but may not be used to show an 
 "intent" at variance with the meaning of the text.
 
In re Sinclair, 870 F.2d 1340, 1344 (7th Cir. 1989) (enforcing 
statute prohibiting conversion of bankruptcy case from chap-
ter 11 to chapter 12 despite conference report saying conver-
sion possible and describing circumstances in which it should 
occur); see also Oliver Wendell Holmes, The Theory of Legal 
Interpretation, 12 Harv. L. Rev. 417, 419 (1899) ("We do not 
inquire what the legislature meant; we ask only what the 
statute means").

 In any case, we do not think the passages in the legislative 
history to which Public Citizen refers us suggest that the 
Congress intended only housekeeping records to be subject to 
disposal under the RDA. The primary concern of the Con-
gress was to reduce the unnecessary retention of records. 
Agencies were retaining too many records, not too few, and it 
is unsurprising that the Congress especially contemplated the 
disposal of many housekeeping records. See H.R. Rep. No. 
79-361, at 1 (1945) ("The primary purpose of this bill is to 
prevent the United States Government from incurring large 
and unnecessary expenses resulting from the failure of many 
agencies to schedule for disposal routine 'housekeeping' rec-
ords such as those relating to the hiring of personnel, pro-
curement of supplies, and fiscal management, that are com-
mon to many or all agencies"); S. Rep. No. 79-447, at 1 (1945) 
(same). As the Supreme Court has observed, however, stat-
utes "often go beyond the principal evil to cover reasonably 
comparable evils, and it is ultimately the provisions of our 
laws rather than the principal concerns of our legislators by 

which we are governed." Oncale v. Sundowner Offshore 
Servs., Inc., 523 U.S. 75, 79 (1998) (holding prohibition of 
discrimination "because of sex" in Title VII of Civil Rights 
Act of 1964 applies to same-sex harassment, though that "was 
assuredly not the principal evil [with which] Congress was 
concerned").

 Public Citizen also notes that in 1978, when the Congress 
made the Archivist's use of general records schedules binding 
upon agencies subject to the RDA, see Pub. L. No. 95-440, 92 
Stat. 1063, 1063 (codified as amended at s 3303a(b)), the 
committee reports not only expressed concern with the un-
necessary retention of housekeeping records, but also stated 
that if "the records are unique to an agency, rather than 
simply of a general nature, they would not be affected by this 
bill." H.R. Rep. No. 95-1263 at 2 (1978), reprinted in 1978 
U.S.C.C.A.N. 2623, 2624; S. Rep. No. 95-711 at 2 (1978). 
Public Citizen claims the 1978 amendment thus reaffirmed 
the limitation of s 3303a(d) to housekeeping records original-
ly evinced in the 1945 committee reports, inasmuch as pro-
gram records could be of a type unique to the agency that 
administers the particular program. As the Archivist points 
out, however, the amendment made the use of general rec-
ords schedules mandatory by substituting a new s 3303a(b) 
so providing, but did not in any way change s 3303a(d). If 
the latter section did not mean what Public Citizen claims it 
meant in 1945, then it still does not because nothing in the 
1978 amendment changed its meaning. Even if, however, we 
were to assume the statement in the 1978 reports demon-
strates the committees' understanding that s 3303a(d) had 
been limited from the outset to housekeeping records, we 
would be reluctant to rely upon it; "the views of one Con-
gress as to the meaning of an Act passed by an earlier 
Congress are not ordinarily of great weight." United States 
v. X-Citement Video, Inc., 513 U.S. 64, 77 n.6 (1994); see also 
Republican Nat'l Comm., 76 F.3d at 405 (holding that where 
subsequent legislation merely carried over earlier provision 
"without substantial change, the House report is essentially 
post-enactment history, carrying little probative weight").

 In sum, we cannot accept Public Citizen's invitation to use 
legislative history to supplant rather than to interpret the 
statute.

 b. Chevron step two
 
 We now proceed under step two of Chevron to examine 
whether the Archivist's interpretation "is reasonable in light 
of the language, legislative history, and policies of the stat-
ute." Republican Nat'l Comm., 76 F.3d at 406. Public 
Citizen asserts that it would be irrational to construe 
s 3303a(d) in such a way as "to give the Archivist the power 
to authorize the destruction of all records stored on a given 
medium or created by a given technology, without regard to 
the records' purposes [or] content."

 This argument is based upon a misunderstanding of GRS 
20 and the Archivist's rationale for adopting it. Under 
s 3303a(d) the Archivist must assess the "administrative, 
legal, research, or other value" of a record before authorizing 
its disposal--which is inherently a content-based judgment. 
As the district court reasoned, there must be "a relationship 
between the commonality of records covered by a general 
schedule and their diminished value." Carlin I, 2 F. Supp. 2d 
at 12. We agree, for if there were little or no relation 
between the features common to a set of records and their 
value, then they could not be scheduled for disposal pursuant 
to a general records schedule because no categorical assess-
ment could logically be made of their value.

 The district court concluded from this that the "common 
feature of the records scheduled under GRS 20--the fact that 
they have been generated by electronic technology--has no 
relation to each record's value." Id. That captures only half 
the matter, however. GRS 20 does not authorize disposal of 
electronic records per se; rather, such records may be dis-
carded only after they have been copied into an agency 
recordkeeping system.* Therefore, GRS 20 seems to us to 

__________
 * One might say, tracking the statute, that the records share both 
the "form" of being electronic and the "character" of having been 
duplicated and placed in an agency recordkeeping system.

embody a reasoned approach to accomplishing the potentially 
conflicting goals of the Congress: "[j]udicious preservation 
and disposal of records." s 2902(5).

 We note also that in a neighboring part of the RDA the 
Congress codified the very approach that Public Citizen 
claims it prohibited in s 3303a(d). Section 3303(1) requires 
the head of each agency to submit to the Archivist

 lists of any records in the custody of the agency that 
 have been photographed or microphotographed under 
 the regulations and that, as a consequence, do not appear 
 to have sufficient value to warrant their further preser-
 vation by the Government.
 
Analogously, GRS 20 authorizes disposal of electronic mail 
and word processing files that have been copied to a record-
keeping system and, "as a consequence," id., lack sufficient 
value to warrant their continued preservation. The technolo-
gy of duplication may be different but the principle is the 
same. We think this provision highly persuasive in demon-
strating that the Archivist's approach in GRS 20 does not 
reflect an unreasonable interpretation of the statute.

 Public Citizen also claims that "the Archivist's unexplained 
departure from prior statements that general schedules are 
limited to administrative records ... requires that [GRS 20] 
be set aside." The prior statements to which Public Citizen 
refers, however, apparently concerned authorizations to dis-
card the only extant version of a record, not a record that had 
been copied to a recordkeeping system; at the least, Public 
Citizen has directed our attention to no prior statement of the 
Archivist concerning an approach analogous to that in GRS 
20. Moreover, the Archivist claims, and Public Citizen does 
not dispute, that GRS 23, the predecessor to GRS 20, applied 
to program records at the same time Public Citizen claims the 
Archivist's policy limited general schedules to housekeeping 
records. See GRS 20, 60 Fed. Reg. at 44,644/1 ("The GRS 23 
that was approved in 1988 authorized deletion of word pro-
cessing and e-mail records from [personal computers] after 
they had been copied to paper or microform. This authority 
has now been moved to GRS 20 and is extended to authorize 

deletion of [such records] after they have been copied to an 
electronic recordkeeping system"). When a general schedule 
authorizes disposal of an uncopied record, it is obvious why 
the Archivist would wish to exclude program records, for an 
error means the loss of a record; when a record is discarded 
pursuant to GRS 20, however, it has already been copied to 
the agency's recordkeeping system, and there is no risk that 
information will be lost to future users. We conclude, there-
fore, that Public Citizen has identified no policy of the Archi-
vist with which GRS 20 is inconsistent. See Bush-Quayle '92 
Primary Comm. v. FEC, 104 F.3d 448, 454 (D.C. Cir. 1997) 
("We may permit agency action to stand without elaborate 
explanation where distinctions between the case under review 
and the asserted precedent are so plain that no inconsistency 
appears").

 In sum, we hold under Chevron step one that s 3303a(d) 
does not preclude the Archivist from including program rec-
ords in a general schedule because the statutory source of his 
authority draws no distinction between program and house-
keeping records. Under Chevron step two we hold that the 
Archivist permissibly construed the statute to allow the dis-
posal of program records the contents of which have been 
preserved in a recordkeeping system. Accordingly, we up-
hold the Archivist's interpretation against this challenge.

 2. Time specified for disposal of records
 
 The Archivist may authorize the disposal of records under 
a general schedule "after the lapse of specified periods of 
time," if such records will not then have sufficient value to 
warrant their preservation. s 3303a(d). In GRS 20 he in-
structed agencies to delete word processing and electronic 
mail files after their transfer to a recordkeeping system, 
although word processing files may be retained until "no 
longer needed for updating or revision." GRS 20, 60 Fed. 
Reg. at 44,649/1.

 Public Citizen argues that GRS 20 contravenes s 3303a(d) 
because the Archivist did not "specif[y] periods of time" in 
months or years for the retention of records. The Archivist 
responds that the statute does not require him to specify the 

time at which records may be discarded in months or years, 
and that he did specify the time for disposal of such records 
by reference to a condition subsequent, namely, the place-
ment of the records in a recordkeeping system. We agree.

 As to Chevron step one, we do not see how the phrase 
"specified periods of time" can be said unambiguously to 
require the Archivist to select a period in terms of months or 
years. Whether the period to elapse before a record may be 
discarded is expressed rigidly in terms of months or years, or 
more flexibly in terms of when a record has been transferred 
to a recordkeeping system, a precise moment has been speci-
fied. Similarly, under Chevron step two, if the Archivist is to 
make the best determination of when records of a certain 
type will cease to have sufficient value to warrant their 
retention, then it is eminently sensible that he be able to rest 
that determination upon a future condition the occurrence of 
which will diminish the value of the records, without requiring 
that he predict precisely when that will occur.*

 Public Citizen argues next that the Archivist's approach 
defeats the purpose of the RDA because the event that 
triggers the agency's obligation to discard a record is within 
the control of the agency, not that of the Archivist, and that 
GRS 20 thus removes the Archivist as a check upon an 
agency's disposal of records. This point is not well taken for, 
as the Archivist explains, he "has not provided an open-ended 
grant of authority for agencies to delete records at their 
leisure." Before an agency may discard electronic mail or 
word processing files, pursuant to GRS 20 it must first copy 
them to a recordkeeping system; an agency's control over the 

__________
 * Although Public Citizen claims the Archivist failed to make this 
argument to the district court, we see that the Archivist reasoned 
both in his reply memorandum in support of his motion for sum-
mary judgment and in GRS 20 itself that the statute authorizes him 
to order disposal of records "after they have been copied to [a] 
recordkeeping system." GRS 20, 60 Fed. Reg. 44,649/1 (items 13 & 
14); see National R.R. Pass. Corp. v. Boston & Maine Corp., 503 
U.S. 407, 420 (1992) ("we defer to an interpretation which was a 
necessary presupposition of the [agency's] decision").

timing of that decision is irrelevant to the result that the 
record is preserved, and therefore that the Archivist has 
indeed placed a critical check upon an agency's disposal of 
electronic records.

 We therefore uphold the Archivist's interpretation of 
s 3303a(d) as permitting him to base the time for disposal of 
records upon their having been copied and placed in a record-
keeping system.

B. Arbitrary and Capricious Challenge

 Recall that under s 3303a(d) the Archivist may promulgate 
general records schedules authorizing the disposal of records 
only if he determines that "such records will not, at the end of 
the periods specified, have sufficient administrative, legal, 
research, or other value to warrant their further preserva-
tion." Public Citizen claims the Archivist made no such 
determination of value in GRS 20. Curiously, it then con-
cedes he implicitly (and, Public Citizen argues, erroneously) 
determined that once a copy of such a record is placed in a 
paper or electronic recordkeeping system, the original lacks 
sufficient value to warrant its further preservation. We 
accept Public Citizen's concession that the Archivist made a 
determination of value, though we think it explicit rather than 
implicit: The Archivist explained--in a discussion entitled 
"Value of Electronic Records," see GRS 20, 60 Fed. Reg. at 
44,643/3 to 44,645/2--that records located in personal comput-
ers cannot adequately be searched and are therefore "of 
limited use to both the originating agency and to future 
researchers." Id. at 44,645/2. The question we must now 
decide is whether the Archivist's determination of value is 
arbitrary and capricious.

 We first note that Public Citizen does not contest the 
permissibility of discarding the electronic original of a record 
that has been fully copied to an electronic recordkeeping 
system. Instead, Public Citizen "stresse[s] that hard copy 
[i.e., paper] records are not satisfactory replacements for 
records in electronic format[, citing] the well-known advan-
tages of electronic records for future research." GRS 20, 60 
Fed. Reg. at 44,643/3. Our focus, therefore, is upon whether 

the Archivist acted arbitrarily and capriciously in determining 
that a paper copy in a paper recordkeeping system is an 
adequate substitute for the electronic original, that is, to the 
point that the original lacks sufficient value to warrant its 
continued preservation. Two considerations inform this in-
quiry: (1) the superiority of electronic records for searching, 
manipulating, and indexing information, and (2) the complete-
ness of the information copied to a paper recordkeeping 
system.

 1. Superiority
 
 Public Citizen argues the Archivist acted arbitrarily and 
capriciously when he authorized (and thereby required) dis-
posal of the original electronic records after they have been 
printed and placed in a paper recordkeeping system; as the 
Archivist himself recognized, records in electronic form can 
be searched, manipulated, and indexed in ways that paper 
records cannot. See, e.g., id. The Archivist explained his 
decision on the ground that these admitted benefits accrue to 
any significant degree only for electronic records that are 
maintained in an electronic recordkeeping system:

 For records to be useful they must be accessible to all 
 authorized staff, and must be maintained in recordkeep-
 ing systems that have the capability to group similar 
 records and provide the necessary context to connect the 
 record with the relevant agency function or transaction. 
 Storage of electronic mail or word processing records on 
 electronic information systems that do not have these 
 attributes will not satisfy the needs of the agency or the 
 needs of future researchers.
 
 Search capability and context would be severely limit-
 ed if records are stored in disparate electronic files 
 maintained by individuals rather than in agency-
 controlled recordkeeping systems. Furthermore, if elec-
 tronic records are stored in electronic information sys-
 tems without records management functionality, perma-
 nent records may not be readily accessible for research. 
 Unless the records are adequately indexed, searches, 
 even full-text searches, may fail to find all documents 
 
 relevant to the subject of the query. In addition, numer-
 ous irrelevant temporary records, that would be segrega-
 ble in systems with records management functionality, 
 may be found. Agency records can be managed only if 
 they are in agency recordkeeping systems.
 
Id. at 44,644/1-2.

 Public Citizen's argument ignores this obviously material 
difference between the value of records that are part of an 
agency's centralized recordkeeping system and the value of 
those that are accessible only by searching a particular 
personal computer. We do not think the Archivist acted 
unreasonably in discounting the comparative value of "dispa-
rate electronic files maintained by individuals rather than in 
agency-controlled recordkeeping systems." Id.; see also id. 
at 44,646/1 ("Even accessible network word processing direc-
tories are inadequate if they are part of information systems 
that lack records management functionality").

 Public Citizen next claims that many agencies either are 
now or will in the foreseeable future be capable of managing 
their records in electronic form on an agency-wide basis. 
This point, too, the Archivist addressed in promulgating GRS 
20, as follows:

 Agencies must maintain their records in organized files 
 that are designed for their operational needs. Agencies 
 that currently have traditional paper files print their 
 electronic mail records, word processing records, spread-
 sheets, and data base reports so that their files are 
 complete, comprehensible, and in context with related 
 records. Agency functions that have not been automated 
 must be supported by hard copy files, even when some 
 types of related records are generated electronically. 
 Agencies that decide to maintain their records in elec-
 tronic recordkeeping systems do so for compelling opera-
 tional needs, not for future researchers. In some cases 
 ... agencies create automated indexes to hard-copy rec-
 ords rather than digitizing all of the records themselves. 
 In any case, the decision must be based on an analysis of 
 
 the needs of and benefits to the agency, balanced against 
 available resources.
 
Id. at 44,645/1.

 According to Public Citizen this explanation, which permits 
each agency to decide whether to retain records in electronic 
form or to transfer them to paper based solely upon the 
agency's operational needs, i.e., the "administrative" value of 
the records, fails adequately to consider the "research" value 
of the records. s 3303a(d). Public Citizen also relies upon 
the following statement in the preamble to another final rule 
promulgated the same day as GRS 20, in which the Archivist 
set standards whereby an agency may establish a recordkeep-
ing system for electronic mail:

 Electronic recordkeeping systems may be the best means 
 to preserve the content, structure, and context of elec-
 tronic records. In addition, an automated system may 
 be more easily searched and manipulated than paper 
 records. The electronic format may also allow simulta-
 neous use by multiple staff members and may provide a 
 more efficient method to store records. Furthermore, 
 when they are no longer needed by the creating agency, 
 access by future researchers to permanently valuable 
 electronic records would be enhanced by electronic pres-
 ervation.
 
Final Rule: Electronic Mail Systems, 60 Fed. Reg. 44,634, 
44,639/1-2 (1995).

 Contrary to Public Citizen, we think it plain that the 
Archivist adequately weighed not only the "administrative" 
but also the "legal, research, and other value" of records in 
arriving at his decision. s 3303a(d). In the Electronic Mail 
Systems rule upon which Public Citizen relies, the Archivist 
explained that "neither the standards [in that rule] nor the 
Federal Records Act require[s] electronic recordkeeping," 60 
Fed. Reg. at 44,634/3. He conceded that electronic records 
will be of greater use for research if maintained in electronic 
recordkeeping systems and even encouraged agencies to de-

velop those systems where practicable. But he also explained 
that

 the prospective interests of future researchers cannot be 
 used to force agencies to do the impossible nor can these 
 interests dictate to agencies how they should preserve 
 their records for their own use. Agencies must create 
 and maintain records to conduct Government business 
 and account for their activities. Only the agency can 
 determine what format best serves these purposes. 
 Some agencies, or components of agencies, may deter-
 mine that paper recordkeeping will continue to be ade-
 quate and cost-effective for the documentation of their 
 transactions.
 
Id. at 44,638/1-2.

 Public Citizen's argument that the Archivist failed to con-
sider the research value of electronic records, therefore, 
reduces to the assertion that it is arbitrary and capricious for 
the Archivist not to require all agencies that create electronic 
mail or word processing records either to establish electronic 
recordkeeping systems immediately or to retain their elec-
tronic records until such time as they have electronic record-
keeping systems. In view of the Archivist's explanations in 
both GRS 20 and the Electronic Mail Systems Rule, however, 
we think his decision to permit agencies to maintain their 
recordkeeping systems in the form most appropriate to the 
business of the agency is reasonable. Nor does Public Citi-
zen claim that agencies have a legal duty to establish elec-
tronic recordkeeping systems.

 We agree with Public Citizen that electronic recordkeeping 
has advantages over paper recordkeeping, but our duty as a 
reviewing court is to ask only whether the Archivist's policy 
choice is arbitrary or capricious; manifestly it is not. All 
agencies by now, we presume, use personal computers to 
generate electronic mail and word processing documents, but 
not all have taken the next step of establishing electronic 
recordkeeping systems in which to preserve those records. 
It may well be time for them to do so, but that is a question 

for the Congress or the Executive, not the Judiciary, to 
decide.

 In sum, we do not think the Archivist must, under the 
RDA, require agencies to establish electronic recordkeeping 
systems. Nor do we think it unreasonable for the Archivist 
to permit each agency to choose, based upon its own opera-
tional needs, whether to use electronic or paper recordkeep-
ing systems. The Archivist's finding that electronic records 
are of limited use unless maintained in a recordkeeping 
system is reasonable as well. Consequently, we uphold his 
ultimate determination that a record in electronic form lacks 
sufficient value to warrant preservation once it is transferred 
intact to a paper recordkeeping system.

 2. Completeness
 
 In Armstrong we held that a paper printout of an electron-
ic mail record is not an "extra cop[y]" within the meaning of 
s 3301 if it does not include transmission data, such as the 
names and addresses of both the recipient and the author and 
the date the message was sent--the electronic equivalents of 
the address, return address, and date on correspondence sent 
by conventional mail. See 1 F.3d at 1283. Public Citizen 
cites Armstrong for the proposition that electronic records 
often contain information that may not be transferred to 
paper when printed; its point is that GRS 20 is arbitrary and 
capricious because it does not require this information to be 
preserved. The Archivist responds that GRS 20 does in fact 
require that all such information be preserved in the agency's 
recordkeeping system before the electronic original may be 
discarded. We agree with the Archivist.

 With respect to electronic mail, GRS 20 on its face address-
es the concerns raised in Armstrong by requiring the record-
keeping system to capture all relevant transmission data. 
See 60 Fed. Reg. at 44,646/3, 44,649/1 (item 14 and Note 
thereto). Public Citizen identifies no information that may 
not be transferred when the record is copied to paper pursu-
ant to the requirements of GRS 20.

 With respect to word processing files, Public Citizen claims, 
based upon the capabilities of extant computer software, that 
there may be hidden comments or summaries that are not 
printed out--the electronic equivalents of a Post-itR note or 
an abstract--the preservation of which is not required by 
GRS 20. See id. at 44,649/1 (item 13). Although the Archi-
vist claims in his brief that GRS 20, properly interpreted, 
does require the preservation of such hidden items in word 
processing records, he did not make that point express in 
promulgating GRS 20. The Archivist explains that GRS 20 
requires retention of all such information, for the preamble to 
the schedule requires that a recordkeeping system "pre-
serve[ ] the[ ] content, structure, and context" of a record. 
Id. at 44,644/1. In other words, as counsel for the Archivist 
put it at oral argument, if the information is part of a record 
under the RDA, see s 3301, then it must be preserved. Thus, 
the Archivist claims that GRS 20 says precisely what Public 
Citizen thinks it should but does not say.

 The Archivist's interpretation of his own regulation is 
"controlling unless plainly erroneous or inconsistent with the 
regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997). That 
standard is easily met here. We also note that the Archivist's 
interpretation is consonant with the requirement in GRS 20 
that a word processing file be "copied" to a recordkeeping 
system. 60 Fed. Reg. at 44,649/1 (item 13); see Armstrong, 1 
F.3d at 1283 (explaining that "unless the paper versions 
include all significant material contained in the electronic 
records ... the two documents cannot accurately be termed 
'copies' "). That the Archivist's interpretation comes for the 
first time in litigation does not make it unworthy of defer-
ence, as "[t]here is simply no reason to suspect that the 
interpretation does not reflect the agency's fair and consid-
ered judgment on the matter in question." Auer, 519 U.S. at 
462. Considering the substance of that interpretation, we 
trust that Public Citizen is not aggrieved by this indulgence.

 Lastly, Public Citizen complains that the Archivist improp-
erly relies upon the preamble in his interpretation of the 
general schedule. We regularly rely upon the preamble in 

interpreting an agency rule. See National Mining Ass'n v. 
EPA, 59 F.3d 1351, 1355 n.7 (D.C. Cir. 1995). The purpose of 
the preamble, after all, is to explain what follows. See 5 
U.S.C. s 553(c) ("After consideration of the relevant matter 
presented, the agency shall incorporate in the rules adopted a 
concise general statement of their basis and purpose").

 In sum, we reject Public Citizen's claim that GRS 20 fails 
to require that all relevant information be transferred to a 
paper recordkeeping system before an electronic original may 
be discarded.

 III. Conclusion

 For the foregoing reasons, we uphold GRS 20. We there-
fore need not decide whether the Executive Office of the 
President is a proper party to an action brought under the 
RDA, nor whether the district court had the power to enter 
an injunction ordering the Archivist to comply with its declar-
atory judgment holding the schedule invalid. Accordingly, 
the judgment of the district court is

 Reversed.